IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERD DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| JOHN DOE I on behalf of JOHN DOE II, A minor<br>　　Plaintiff,<br><br>v.<br><br>HUNTINGTON INDEPENDENT SCHOOL DISTRICT,<br>　　Defendant. | § § § § § § § § § § | CASE NO._____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes John Doe I on behalf of John Doe II, a minor, (hereinafter "Plaintiff"), and files this Original Petition, in support of which would respectfully show the following.

1.  This is a case brought pursuant to Title IX for the harassment and sexual assault of Plaintiff minor, a student, by another student in Huntington Independent School District ("HISD" or "Defendant").

**PARTIES**

2.  Plaintiffs are, and at all times mentioned in this Complaint were, residents of Huntington, Angelina County, Texas.

3.  Defendant HISD is a municipality of the State of Texas. It may be served via its Superintendent, David W. Flowers, at 908 N. Main St., Huntington, TX 75949.

**VENUE**

4.  Venue is proper in Angelina County, Texas, as the county in which all or part of the cause of

action arose.

## JURISDICTION

5.  This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

## FACTS

6.  Plaintiff John Doe II ("Plaintiff"), a former student at HISD who was sexually assaulted by a fellow student during his freshman year, brings this suit against Defendant HISD. Plaintiff seeks to hold HISD liable under Title IX of the Education Amendments Act of 1972 ("Title IX"), which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." U.S.C. § 1681(a).

7.  HISD has had a longstanding culture of tolerating and even encouraging bullying and hazing behavior. This was true in general, but even more so with student athletes. Students and/or parents who attempted to report bullying or hazing were told to ignore it or to get over it.

8.  The "initiation" of freshmen athletes by senior athletes was an ongoing "tradition" at the high school. It was well known that this initiation included grabbing the freshmen athletes' testicles and/or putting fingers in their anuses.

9.  Prior to the events involving John Doe II, some female students started a web page specifically to bully and make fun of another female student. When this was brought to the attention of the principal, Shane Stover, his response was to recommend that the victim of the bullying change schools. The harassers were not punished.

10. A male HISD student reported to his mother (Plaintiffs will use the pseudonym "Jane Smith" for this mother) that he was being verbally harassed at school. Jane Smith contacted her son's coach by email to get some help in April 2018 and part of the response she received was that

the kids had to "learn to ignore it." When the harassment did not abate, Jane Smith scheduled a meeting with Principal Stover on September 6, 2018.

11. Also in the Spring of 2018, Jane Smith was transporting several HISD student athletes in the back of her car. The boys began talking about some kind of initiation for the baseball team and how they would defend themselves saying things to the effect of "they're not gonna do that to me," and "I'll bow up on em." Jane Smith did not get more specific information at that time but understood the boys to mean that there was some sort of physical initiation or hazing on the baseball team. Upon information and belief, physical hazing was a longstanding practice in HISD high school athletics and, in particular, on the baseball team.

12. When Jane Smith and her husband met with Principal Stover on September 6, 2018, they discussed the bullying of their son and also brought up the hazing on the baseball team that she had previously learned about. Mr. Stover asked Jane Smith what her son was doing to bring the harassment on himself and why he wasn't standing up for himself. When her son joined the meeting, Mr. Stover stated that he could bring in the harassers and question them, but they would only lie and it would only make matters worse.

13. Toward the end of the meeting between the "Smiths" and Mr. Stover, Mr. Stover was reviewing his notes and addressed again the report of "hazing" on the baseball team. He stated that he did not like the word "hazing," but that he would check into it. Nothing was done either regarding the bullying of Jane Smith's son or the hazing on the baseball team.

14. Plaintiff John Doe II began attending Huntington High School in the fall of 2018. There was talk amongst the baseball players about "initiation" by one player putting his fingers in the initiate's anus. One of the seniors (Plaintiff will use the pseudonym Sam Stone) would point at individual player/students and say things such as "I got him." At least one student reports that

such physical hazing was so rampant that it would frequently occur in the school hallways between classes. The conduct was ignored or dismissed by teachers and staff.

15. On or near September 12, 2018, Plaintiff was in the boys' locker room after a morning workout at school. As Plaintiff was attempting to get dressed, Stone approached and, against Plaintiff's will, forced a broomstick into Plaintiff's anus. Plaintiff was shocked and traumatized by such conduct on the part of Stone. Plaintiff did not immediately report such conduct because he was humiliated, embarrassed, and afraid of ridicule and retaliation.

16. On or near September 26, 2018, Plaintiff was again in the locker room, dressing for practice. Stone came up behind Plaintiff, grabbed his rear end and attempted to insert his finger or fingers into Plaintiff's anus. Again, Plaintiff was shocked and traumatized by such conduct on the part of Stone. Plaintiff did not immediately report such conduct because again, he was humiliated, embarrassed and afraid of ridicule and retaliation. Further, Plaintiff believed from what he had heard that this conduct had been going on for a long time, perhaps even years. If such conduct had not been already stopped by the school or the coaches, it must be at least implicitly authorized.

17. On January 21, 2019, the parents (Plaintiff will use the pseudonym of Mr. and Mrs. Thomas) of another Huntington High School student sent a letter to the Superintendent of HISD, David Flowers. This letter complained of a number of things relating to the discipline of their son, but on the last page, the letter stated "[w]ord has it that the baseball boys are pinning the younger kids to the floor and taking their clothes off so [Sam Stone] can put his finger in their anus as part of their 'initiation.' I have been told that [a student other than Plaintiff] was subjected to this 'initiation.'"

18. On the date that HISD received the "Thomas" letter, Plaintiff was called in by Principal

Stover and questioned about baseball "initiation." Plaintiff, still humiliated and fearful, did not initially admit to being a victim of sexual assault at that time. The following day, Mr. Stover twice called Plaintiff in for questioning and Plaintiff continued to deny being a victim of sexual assault. The following day, Mr. Stover once again called Plaintiff in to his office for questioning and promised to Plaintiff that anything revealed would stay just between them. At that time, Plaintiff explained to Mr. Stover what he had experienced in the locker room.

19. On or about January 24, 2019, Plaintiff's father, John Doe I, received calls from other parents telling him about what had happened to his son. John Doe I then had a long talk with John Doe II and learned the details of what had happened in the locker room.

20. Subsequent to Plaintiff's last meeting with Mr. Stover, he began experiencing harassment, derision and bullying at school based upon telling the principal what had happened in the locker room. He was called names relating to a broomstick and there were numerous derogatory and/or mocking posts on social media, including the posting of a picture of a broomstick with the caption "Huntington's worst nightmare." Another student sent a snapchat message to Plaintiff threatening to beat him "senseless" to make him regret talking. Plaintiff began to isolate himself from the other students, eating lunch by himself and hiding out in the teachers' rooms.

21. In late January, another student confronted Plaintiff during a class and accused Plaintiff of talking about the initiation. Words were exchanged and the other students began egging on the boys to "fight!" Plaintiff texted his father, who instructed Plaintiff to go to the office and wait to be picked up. When Plaintiff went to the office, he saw Stone sitting in Mr. Stover's office—this despite the fact that Mr. Stover had earlier assured Plaintiff John Doe I that Stone would be moved to an alternative school placement.

22. At or near the time that Plaintiff was pulled from school by his father, the Athletic Director

and/or coaches called a meeting of the student athletes and told them that the athletes needed to stick together and that it was important to go to the coaches with any issues before discussing it outside of the athletic department. The athletic department created a culture of bullying, hazing and a code of silence, shaming any boy who complained of such treatment.

23. After learning of what happened to Plaintiff, Mr. Stover failed to contact the authorities, failed to properly investigate, failed to ensure Plaintiff's safety, and failed to ensure no further contact by the assailant.

24. Eventually the authorities were contacted by another HISD parent. Stone has been criminally indicted for the following acts committed upon at least three HISD students: 1. Attempted sexual assault of a minor (not Plaintiff) on November 7, 2017 by pushing his fingers toward that student's anus; 2. Sexual assault of a minor (Plaintiff) on September 12, 2018 by inserting a broom handle into Plaintiff's anus; 3. Attempted sexual assault of a minor (Plaintiff) on September 26, 2018 by pushing his fingers towards Plaintiff's anus; and 4. Attempted sexual assault of a minor (not Plaintiff) on September 19, 2018 by tackling the minor, sitting on his chest, and grabbing his testicles while another individual pressed a broomstick toward the student's anus. These assaults were all part of an ongoing hazing ritual taking place on the baseball team (and possibly the basketball team). At least three of the sexual assaults and attempted sexual assaults by Stone were committed on school property within weeks of Jane Smith's report to Mr. Stover of the hazing, which went unheeded. A reasonable response from Mr. Stover and/or other school authorities to the information that had been provided would have prevented these assaults. The criminal indictment for acts in November 2017 make it clear that the hazing had been going on for at least a year. Upon information and belief, the hazing had likely been going on for more than two years.

25. As a result of HISD's failure to address/prevent and/or failure to respond appropriately, Plaintiff was deprived of a multitude of educational opportunities and/or benefits, including but not limited to avoidance of social activities on campus; avoidance of certain areas of campus; withdrawal from social relationships on campus; withdrawal from the baseball team; and withdrawal from Huntington High School altogether. Because of the necessity of withdrawal, Plaintiff was deprived of the opportunity to play baseball for the remainder of the 2018/2019 school year.

24. HISD's student conduct processes were wholly inadequate to consistently provide a prompt and equitable response under Title IX. HISD failed to take action to identify and, as needed, eliminate a potential hostile environment, prevent its recurrence, or address any effects on the individual complainant or broader campus community. The alleged investigation by Mr. Stover was wholly inadequate to fairly and reliably evaluate whether sexual violence had occurred, and administrators engaged in conduct that is fairly categorized as victim-blaming.

25. Plaintiff contends that HISD officials have known about the problem of sexual assaults committed by student–athletes for several years. All reports of assaults/sexual assaults and/or bullying by student athletes were dismissed as insignificant, acceptable or ignored.

## TITLE IX

26. Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in all federally-funded educational programs. 20 U.S.C. § 1681(a). Specifically, it provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

*Id*. When Congress first passed Title IX more than forty years ago, it had two related objectives: first, Congress wanted to prevent federal funds from being used to support discriminatory

practices; second, it wanted to provide individuals "effective protection against those practices."

27. Title IX is enforceable through an individual's private right of action and allows for the recovery of damages. The sexual harassment of Plaintiff on school premises was a form of sex discrimination because the harassment was so severe, pervasive, and objectively offensive that it deprived Plaintiff of educational opportunities or benefits provided by the school. The school, through its officials, was deliberately indifferent to the harassment of which it had actual knowledge.

28. Plaintiffs allege two types of Title IX claims. First, Plaintiffs allege a "heightened risk claim:" that prior to his report of sexual assault, HISD's actual notice of the threat posed by Stone and other student–athletes and deliberate indifference to that threat— manifested by the discouragement of reporting, failure to investigate claims or punish assailants, and perpetuation of a culture in which athletes were protected from allegations of misconduct—constituted actionable discrimination that substantially increased Plaintiff's risk of being sexually assaulted.

29. Second, Plaintiffs allege a "post reporting" claim for sexual assault under Title IX. Plaintiff John Doe II was sexually assaulted by a peer at HISD, he reported the assault to the school, and HISD's deliberately indifferent response to that report deprived him of educational opportunities and benefits provided by the school.

**A. Heightened Risk of Sexual Harassment or Assault**

30. HISD's actual notice of the threat posed by Stone and other student–athletes and deliberate indifference to that threat subjected him to a heightened risk of sexual assault. Specifically, HISD failed to address and actively concealed sexual violence committed by its athletes for several years,; that school staff were repeatedly and directly informed of sexual assaults committed by athletes and neither reported the misconduct nor conducted appropriate investigations, and that

those actions gave rise to an "overall perception that athletes were above the rules and that there was no culture of accountability for misconduct." With respect to his specific assailant, HISD knew of previous assaults committed by Stone but failed to take any protective action.

31. Institutions may be held liable in damages under Title IX "where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." HISD's deliberate indifference response to the harassment—or lack thereof—was clearly unreasonable in light of the known circumstances. Principal Stover was made specifically aware of the sexually inappropriate hazing of younger athletes by senior athletes and failed to take any steps at all to prevent it from continuing. Even after being made aware of the assault on Plaintiff, Mr. Stover failed to appropriately investigate and failed to take appropriate responsive measures.

32. HISD was deliberately indifferent to sexual harassment—of which it had actual knowledge—that was so severe, pervasive, and objectively offensive that it could be said to deprive Plaintiff of access to the educational opportunities or benefits provided by the school. HISD's failure to address and active concealment of sexual violence committed by its athletes, including Stone, was a form of discrimination. HISD's knowledge of the need to supervise senior athletes and protect junior athletes constitutes deliberate indifference. Finally, HISD's deliberate indifference created an environment in which athletes could sexually assault other athletes, including Plaintiff, with impunity. That vulnerability—or heightened risk—constitutes harassment under Title IX.

### B. Post-Reporting Sexual Harassment

33. Plaintiffs allege that HISD was deliberately indifferent to Plaintiff John Doe I's report of

sexual assault, thereby creating a hostile educational environment and subjecting him to further harassment.

34. To "subject" a student to harassment, a school need only make the student vulnerable to that harassment. Thus, the discriminatory harm can include the harm faced by student–victims who are rendered vulnerable to harassment and either leave school or remain at school and endure an educational environment that constantly exposes them to a potential encounter with their harasser or assailant.

35. DOE regulations may still be consulted when assessing the appropriateness of a school's response to reports of sexual assault. DOE regulations require an immediate and appropriate investigation of sexual harassment as well as prompt and effective steps reasonably calculated to end the harassment, eliminate the hostile environment, prevent its recurrence and remedy its effects. HISD failed to adhere to the DOE regulations by failing to eliminate the hostile environment and failing to remedy its effects.

36. HISD was deliberately indifferent to Plaintiff's report of sexual assault, thereby depriving him of educational opportunities to which he was entitled. First, Plaintiff was sexually assaulted by another student while at school. Second, Plaintiff reported his assault to the school principal. Third, the principal did nothing (or almost nothing) in response to his report of sexual assault. HISD failed to adequately investigate his assault and failed to ensure he would not be subjected to continuing assault and harassment. Finally, Plaintiff suffered concrete harms based on HISD's inadequate response, including a decline in grades, avoidance of social activities on campus, avoidance of certain areas of campus, the loss of athletic opportunities, and withdrawal from HISD altogether.

37. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer,

physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

38. Plaintiff further seeks reasonable and necessary attorney fees for the prosecution and appeal of this case as well as prejudgment and post judgment interest as allowed by law.

39. Plaintiff requests a jury trial.

Respectfully submitted,

s/Susan E. Hutchison
Susan E. Hutchison
Texas Bar No. 10354100
sehservice@hsjustice.com

James Robert Hudson, Jr.
Texas Bar No. 24094736
jr@hsjustice.com

HUTCHISON & STOY, PLLC
505 Pecan St., Ste. 101
Fort Worth, TX 76102
Tel. 817-820-0100
Fax 817-820-0111

ATTORNEYS FOR PLAINTIFF